**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

STEPHANIE VALLES, an individual; on
behalf of herself and all others similarly
situated,

                              Plaintiffs,

              vs.

HERITAGE PACIFIC FINANCIAL, LLC, a
Texas Limited Liability Company d/b/a
HERITAGE PACIFIC FINANCIAL, an
unknown and unlicensed fictitious entity;
CHRISTOPHER DAVID GANTER;
Individually and in his Official Capacity;
BENJAMIN ALAN GANTER; Individually and
in his Official Capacity; KENNETH WARREN
KNOX; Individually and in his Official
Capacity; JOHN MARK MONTEIRO;
Individually and in his Official Capacity; and
JOHN AND JANE DOES NUMBERS 3
THROUGH 25,

                              Defendants.

---------------------------------------------------------------x

CASE NO.:  7:12-cv-09452-CS-LMS

**DECLARATION OF WILLIAM F. HORN
IN SUPPORT PLAINTIFF'S MOTION
FOR LEAVE TO FILE AN AMENDED
COMPLAINT AND JOIN
ADDITIONAL PARTIES**

I, William F. Horn, of full age, hereby certify as follows:

1.      I am an attorney at law of the State of New York and the Bar of this Court. I have been retained to serve as co-counsel for Plaintiff, Stephanie Valles, in this action. As such, I am familiar with all of the facts set forth herein and state them to be true.

2.      Pursuant to this Court's Order [*See* Minute Entry dated 11/14/2013], on December 11, 2013, Plaintiff's counsel, Abraham Kleinman, e-mailed a copy of Plaintiff's proposed amended complaint to Defendants' counsel, a copy of which is attached hereto as **_Exhibit A_**.

3.      On December 16, 2013, an attorney employed by Defendants' counsel faxed me a letter simply stating that Defendants "do not consent to the filing of the proposed First Amended

Complaint" and offering no basis for their withholding of consent. Attached hereto as ***Exhibit B*** is a true and correct copy of Defendants' foregoing December 16, 2013, letter.

4.      During the course of discovery, Defendants responded to Plaintiff's written discovery identifying its surety bond holder as HARTFORD CASUALTY INSURANCE COMPANY. The State of Texas, the Defendants reside and operate their debt collection business, requires its resident debt collectors to maintain a surety bond that is issued "in favor of any person who is damaged by [Defendants'] violation of [the Texas Debt Collection Practices Act, Tex. Fin. Code §§ 392, *et seq.*]." Plaintiff is the intended beneficiary of Defendants' surety bond as she was, as alleged in the complaint and proposed amended complaint, damaged by Defendants' violations of the Texas Debt Collection Practices Act. Thus, HARTFORD is an appropriate defendant who should be joined in this action as it is strictly liable for up to $10,000.00 for damages resulting from Defendants' violations of the Texas Debt Collection Practices Act.

5.      Based on Defendants' identification of HARTFORD, Plaintiff removed her cause of action for Defendants' alleged violation of under Count II of her complaint for Defendants' alleged violations of Tex. Fin. Code § 392.101 (i.e., engaging in debt collection in the State of Texas without first obtaining a $10,000.00 surety bond issued by a surety company authorized to do business in the State of Texas).

6.      During the course of discovery, Defendants further identified ALEX GONZALEZ as a Director of Defendant, HERITAGE, who personally reviewed and approved the content of the violative letter attached to Plaintiff's Complaint and proposed First Amended Complaint as Exhibit A. Accordingly, GONZALEZ is a properly named defendant as he has personal liability under the FDCPA, TDCPA, and TILA.

7.      Additionally, during discovery Defendants also identified 262 persons in the United States who received the violative letter attached to Complaint and proposed First Amended

Complaint as Exhibit A, and further produced documents that disclosed the "creditor" listed on that letter is not the actual creditor of Plaintiff's alleged debt. Accordingly, Plaintiff has in her proposed amended complaint sought to expand the scope of the class to include all persons in the United States who received the Defendants' offending letter and added a claim under 15 U.S.C. § 1692g(a)(2) for failing to identify the creditor to whom Plaintiff's alleged debt is owed.

8.      Plaintiff's proposed amendment is not being brought for any improper motive, bad faith purpose, prejudice, or delay. Rather, as counsel for the Plaintiff and the putative class I am ethically obligated to advance <u>all</u> viable claims on behalf of the putative class against <u>all</u> identifiable defendants. Furthermore, Congress specifically intended that FDCPA claims have a detrimental effect on those persons and entities collecting debts who fail or refuse to comply with the provisions of the FDCPA. To that end, the FDCPA enlists the efforts of consumers, like Plaintiff, to act as "private attorneys general" to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others. *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008).

*In accordance with 28 U.S.C. §1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 3rd day of January 2014, at Fresh Meadows, New York.*

*s/ William F. Horn*

William F. Horn, Esq. (WH-1070)
LAW OFFICE OF WILLIAM F. HORN
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone: (718) 785-0543
Facsimile:  (866) 596-9003
Email: bill@wfhlegal.com

*One of the Attorneys for Plaintiff, Stephanie Valles, and all others similarly situated*

# EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____x

STEPHANIE VALLES, an individual; on
behalf of herself and all others similarly
situated,

               Plaintiffs,

       vs.

HERITAGE PACIFIC FINANCIAL, LLC, a
Texas Limited Liability Company d/b/a
HERITAGE PACIFIC FINANCIAL, an
unknown and unlicensed fictitious entity;
CHRISTOPHER DAVID GANTER;
Individually and in his Official Capacity;
BENJAMIN ALAN GANTER; Individually and
in his Official Capacity; KENNETH WARREN
KNOX; Individually and in his Official
Capacity; JOHN MARK MONTEIRO;
Individually and in his Official Capacity; ALEX
GONZALEZ, Individually and in his Official
Capacity; HARTFORD CASULTY
INSURANCE COMPANY, a New Jersey
Corporation; and JOHN AND JANE DOES
NUMBERS 3 THROUGH 25,

               Defendants.

_____x

CASE NO.:  7:12-cv-09452-CS-LMS

**CLASS ACTION**

**FIRST AMENDED COMPLAINT FOR
VIOLATIONS OF THE FAIR DEBT
COLLECTION PRACTICES ACT,
TEXAS DEBT COLLECTION
PRACTICES ACT, AND TRUTH IN
LENDING ACT**

**DEMAND FOR JURY TRIAL**

## I. PRELIMINARY STATEMENT

    1.    Plaintiff, STEPHANIE VALLES ("Plaintiff" or "VALLES") brings this amended

action in response to the unlawful practices of Defendants, HERITAGE PACIFIC FINANCIAL,

LLC d/b/a HERITAGE PACIFIC FINANCIAL ("HERITAGE"), CHRISTOPHER DAVID

GANTER ("CHRIS GANTER"), BENJAMIN ALAN GANTER ("BEN GANTER"),

KENNETH WARREN KNOX ("KNOX"), JOHN MARK MONTEIRO, and ALEX

GONZALEZ ("GONZALEZ") ("MONTEIRO") (collectively referred to hereinafter as

"Defendants") which includes, *inter alia*, false, deceptive, and misleading practices in connection with Defendants' attempt to collect an alleged debt from Plaintiff.

2.      Plaintiff alleges that Defendants' collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Texas Debt Collection Practices Act, Tex. Fin. Code §§ 392, *et seq.* ("TDCPA"), and the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA").

3.      Defendants' unlawful collection practices include, *inter alia*, making false representations concerning the character, amount, or legal status of any debt, making false threats to take action that cannot legally be taken or that is not intended to be taken, and by continuing to collect a disputed debt without first providing verification.

4.      The FDCPA regulates the behavior of debt collectors attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform state action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) – (e).

5.      The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of even a single violation. The Second Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Cloman v. Jackson,* 988 F.2d 1314 (2nd Cir. 1993).

6.      To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among the *per se* violations prohibited by that section are: making false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A); threatening to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

7.      The TDCPA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt.

8.      When enacting TILA, Congress found that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. To that end, the congressional purpose underpinning TILA was, *inter* alia, to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

9.      The Plaintiff, on behalf of herself and all others similarly situated, seeks statutory damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, TDCPA, TILA, and all other common law or statutory regimes.

10.     The Plaintiff, on behalf of herself and all others similarly situated, requests that she and the class members be awarded statutory, common law, or actual damages payable by the Defendants.

11.     This case involves an obligation, or an alleged obligation, primarily for personal, family, or household purposes, and arising from a transaction or alleged transaction. As such, this action arises out of "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

## II. PARTIES

12.     Plaintiff is a natural person.

13.     At all times relevant to this lawsuit Plaintiff was a citizen of, and resided in Thiells, which is a hamlet and census-designated place in the town of Haverstraw, Rockland County, New York.

14.     At all times relevant to this lawsuit, HERITAGE is a Limited Liability Company existing pursuant to the laws of the State of Texas.

15.     Plaintiff is informed and believes, and on that basis alleges, that HERITAGE maintains its principal business address at 2200 K Avenue, Suite 100, City of Plano, Collin County, Texas.

16.     CHRIS GANTER is a natural person.

17.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this lawsuit, CHRIS GANTER resided in the City of Frisco, Collin County, Texas.

18.     BEN GANTER is a natural person.

19.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this lawsuit, BEN GANTER resided in the City of Richardson, Dallas County, Texas.

20.     KNOX is a natural person.

21.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this lawsuit, KNOX resided in the City of Rowlett, Dallas County, Texas.

22.     MONTEIRO is a natural person.

23.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this lawsuit, MONTEIRO resided in the City of Frisco, Denton County, Texas.

24.     GONZALEZ is a natural person.

25.     Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this lawsuit, GONZALEZ resided in the City of Plano, Collin County, Texas.

26.     At all times relevant to this complaint, HARTFORD CASUALTY INSURANCE COMPANY ("HARTFORD") is a New Jersey corporation operating as a casualty and surety company. Plaintiff is informed and believes, and on that basis alleges, that HARTFORD maintains its principal business address at 1 Hartford Plaza, City of Hartford, Hartford County, Connecticut.

27.     Texas Finance Code § 392.101(a) provides "[a] third-party debt collector…may not engage in debt collection unless the third-party debt collector… has obtained a surety bond issued by a surety company authorized to do business in Texas."

28.     Texas Finance Code § 392.101(b)(1) provides that "[t]he third-party debt collector's surety bond must be in favor of any person who is damaged by a violation of [Texas Finance Code § 392, *et seq*.]."

29.     Texas Finance Code § 392.102 provides "[a] person who claims against a bond for violation of [Texas Finance Code § 392, *et seq*.] may maintain an action against the third-party debt collector…and against the surety."

30.     HARTFORD issued a bond to HERITAGE in favor of all persons damaged as a result of HERITAGE's violation of the TDCPA.

31.     Defendants, JOHN AND JANE DOES NUMBERS 3 THROUGH 25, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. The Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

32.     The Plaintiff is informed and believes, and on that basis alleges, that Defendants, JOHN AND JANE DOES NUMBERS 3 THROUGH 25, are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with, conspired with, engaged in, and oversaw policies and procedures used by the employees of HERITAGE that are the subject of this Complaint. Those Defendants personally control, and are engaged in, the illegal acts, policies, and practices utilized by HERITAGE and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

### III.  JURISDICTION & VENUE

33.     Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 15 U.S.C. § 1640, and 28 U.S.C. §§ 1331 and 1337.

34.     Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

35.     Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

36.     Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims of Pascal occurred within this federal judicial district, and because Defendants are subject to personal jurisdiction in the State

of New York at the time this action is commenced.

## IV.  FACTS CONCERNING PLAINTIFF

37.     Sometime prior to December 29, 2011, Plaintiff allegedly incurred a financial obligation in the form of a second mortgage loan on her primary personal residence ("Valles Obligation").

38.     The Valles Obligation is alleged to have arisen out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

39.     Defendants contend that the Valles Obligation is in default.

40.     The Valles Obligation is secured by Plaintiff's primary personal residence, which is a single family home.

41.     The alleged Valles Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

42.     The alleged Valles Obligation is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

43.     Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

44.     Plaintiff is, at all times relevant to this complaint, a "consumer" as that term is defined by Tex. Fin. Code § 392.001(1).

45.     Plaintiff is informed and believes, and on that basis alleges, that sometime prior to December 29, 2011, the creditor of the alleged Valles Obligation either directly or through intermediate transactions assigned, placed, transferred, or sold the debt to the Defendants for collection.

46.     The Defendants are in the business of purchasing defaulted purchase money, foreclosed promissory notes secured by junior liens on residential properties (seconds) from institutional lenders on a bulk "pennies on the dollar" basis.

47.     After purchasing these defaulted debts, the Defendants, through various agents and employees of HERITAGE undertake various means to collect these debts from consumers such as Plaintiff by, *inter alia*, sending letters, placing telephone calls, and filing frivolous lawsuits.

48.     Plaintiff is informed and believes, and on that basis alleges, that the Defendants have no legal right or basis to collect these debts from Plaintiff or other consumers as those debts are non-enforceable.

49.     HERITAGE collects, and attempts to collect, defaulted debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

50.     HERITAGE is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

51.     HERITAGE is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

52.     HERITAGE is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

53.     HERITAGE is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

54.     On information and belief, CHRIS GANTER is a principal owner, director, shareholder, and/or managing partner of HERITAGE.

55.     CHRIS GANTER attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

56.     CHRIS GANTER personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and enforced all of the illegal policies and procedures used by other employees of HERITAGE that are alleged in this complaint.

57.     CHRIS GANTER is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

58.     CHRIS GANTER is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

59.     CHRIS GANTER is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

60.     CHRIS GANTER is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

61.     On information and belief, BEN GANTER is a principal owner, director, shareholder, and/or managing partner of HERITAGE.

62.     BEN GANTER attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

63.     BEN GANTER personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and enforced all of the illegal policies and procedures used by other employees of HERITAGE that are alleged in this

complaint.

64.     BEN GANTER is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

65.     BEN GANTER is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

66.     BEN GANTER is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

67.     BEN GANTER is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

68.     On information and belief, KNOX is a principal owner, director, shareholder, and/or managing partner of HERITAGE.

69.     KNOX attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

70.     KNOX personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and enforced all of the illegal policies and procedures used by other employees of HERITAGE that are alleged in this complaint.

71.     KNOX is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

72.     KNOX is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

73.     KNOX is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

74.     KNOX is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

75.     On information and belief, MONTEIRO is a principal owner, director, shareholder, and/or managing partner of HERITAGE.

76.     MONTEIRO attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

77.     MONTEIRO personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and enforced all of the illegal policies and procedures used by other employees of HERITAGE that are alleged in this complaint.

78.     MONTEIRO is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

79.     MONTEIRO is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

80.     MONTEIRO is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

81.     MONTEIRO is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

82.     On information and belief, GONZALEZ is a principal owner, director, shareholder, and/or managing partner of HERITAGE.

83.     GONZALEZ attempts to collect debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

84.     GONZALEZ personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, oversaw, and enforced all of the illegal policies and procedures used by other employees of HERITAGE that are alleged in this complaint.

85.     GONZALEZ is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

86.     GONZALEZ is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

87.     GONZALEZ is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

88.     KNOX is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

89.     In an attempt to collect the Valles Obligation, Defendants sent the Plaintiff an initial written communication, which is dated December 29, 2011 ("12/29/11 Letter"). A true and correct copy of the 12/29/11 Letter is attached hereto as ***Exhibit A***.

90.     The 12/29/11 Letter is a "communication" as defined by 15 U.S.C. §1692a(2).

91.     The 12/29/11 Letter is the first document that Plaintiff received from Defendants.

92.     The 12/29/11 Letter states "**FINAL DEMAND AND OFFER OF SETTLEMENT TO AVOID INVESTIGATION**." (Emphasis in Original).

93.     The 12/29/11 Letter fails to identify the creditor to whom the alleged Valles Obligation is owed as required by 15 U.S.C. § 1692g(a)(2).

94.     Upon reading the 12/29/11 Letter, Plaintiff believed, as would the least sophisticated consumer, that Defendants were making a one-time, "take it or leave it" settlement offer which would be withdrawn forever if she did not immediately accept Defendant's "final" settlement offer.

95.     The foregoing statement is false, deceptive, and misleading in that the 12/29/11 Letter is not the Defendants' "FINAL DEMAND" as Defendants continued to make demands for payment long after it sent Plaintiff the 12/29/11 Letter.

96.     The foregoing statement is false, deceptive, and misleading in that the 12/29/11 Letter is <u>not</u> the Defendants' "FINAL...OFFER OF SETTLEMENT" as Defendants continued to make settlement offers to Plaintiff long after it sent the 12/29/11 Letter and Defendants will always accept a lower amount of money to settle the alleged debt.

97.     Upon reading the 12/29/11 Letter, Plaintiff further believed, as would the least sophisticated consumer, that Defendants intended to "investigate" her by, *inter alia*, contacting her friends, neighbors, relatives, and employers, and by attempting to obtain her private financial and other banking information if Plaintiff did not immediately accept Defendant's "final" settlement offer..

98.     Plaintiff further believed, as would the least sophisticated consumer, that Defendants intended to file a lawsuit against her if she did not immediately accept Defendant's "final" settlement offer.

99.     The foregoing statement is false, deceptive, and misleading in that Defendants' have no intention of conducting an "investigation" in the event Plaintiff did not accept

Defendant's "FINAL...OFFER OF SETTLEMENT." This statement by Defendants is simply a false threat to take action that Defendants are not legally permitted to take and which Defendants have no intention of taking.

100.    The 12/29/11 Letter also states that HERITAGE "currently owns and holds the promissory note that [Plaintiff] signed and executed for the second mortgage the above referenced property." Plaintiff is informed and believes, and on that basis alleges, that this statement is flatly false and was made to induce Plaintiff into making a payment to Defendants that she was not legally obligated to pay.

101.    Plaintiff is informed and believes, and on that basis alleges, that Defendants are not legally entitled to collect the Valles Obligation.

102.    Plaintiff is informed and believes, and on that basis alleges, that Defendants did not have standing to sue Plaintiff to recover the Valles Obligation or foreclose upon the real property securing that obligation.

103.    Defendants failed to send Plaintiff written notice that HERITAGE was the new creditor of the Valles Obligation within 30 days after the date on which the Valles Obligation was sold or otherwise transferred or assigned to HERITAGE such transfer, including -- the identity, address, telephone number of the new creditor; the date of transfer; how to reach an agent or party having authority to act on behalf of the new creditor; the location of the place where transfer of ownership of the debt is recorded; and any other relevant information regarding the new creditor.

104.    The TILA, at 15 U.S.C. § 1641(g), requires notice of the transfer of ownership of a residential mortgage loan.

105.    Section 1641 (g) provides:

(g) Notice of new creditor.

(1) In general. In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

(2) Definition. As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

106.    Implementing Regulation Z provides, at 12 C.F.R. § 1026.39 (recently renwnbered from 226.39):

Mortgage transfer disclosures.

(a) Scope. The disclosure requirements of this section apply to any covered person except as otherwise provided in this section. For purposes of this section:

(1) A "covered person" means any person, as defined in §[10]26.2(a)(22), that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment, or other transfer, and who acquires more than one mortgage loan in any twelve-month period. For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan or it is assigned to the servicer solely for the administrative convenience of the servicer in servicing the obligation.

(2) A "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

-15-

(b) Disclosure required. Except as provided in paragraph (c) of this section, any person that becomes a covered person as defined in this section shall mail or deliver the disclosures required by this section to the consumer on or before the 30th calendar day following the acquisition date. If there is more than one covered person, only one disclosure shall be given and the covered persons shall agree among themselves which covered person shall comply with the requirements that this section imposes on any or all of them.

    (1) Acquisition date. For purposes of this section, the date that the covered person acquired the mortgage loan shall be the date of acquisition recognized in the books and records of the acquiring party.

    (2) Multiple consumers. If there is more than one consumer liable on the obligation, a covered person may mail or deliver the disclosures to any consumer who is primarily liable....

(d) Content of required disclosures. The disclosures required by this section shall identify the loan that was acquired or transferred and state the following:

    (1) The identity, address, and telephone number of the covered person who owns the mortgage loan. If there is more than one covered person, the information required by this paragraph shall be provided for each of them.

    (2) The acquisition date recognized by the covered person.

    (3) How to reach an agent or party having authority to act on behalf of the covered person (or persons), which shall identify a person (or persons) authorized to receive legal notices on behalf of the covered person and resolve issues concerning the consumer's payments on the loan. However, no information is required to be provided under this paragraph if the consumer can use the information provided under paragraph (d)(I) of this section for these purposes. If multiple persons are identified under this paragraph, the disclosure shall provide contact information for each and indicate the extent to which the authority of each agent differs. For purposes of this paragraph (d)(3), it is sufficient if the covered person provides only a telephone number provided that the consumer can use the telephone number to obtain the address for the agent or other person identified.

    (4) The location where transfer of ownership of the debt to the covered person is recorded. However, if the transfer of ownership has not been recorded in public records at the time the disclosure is provided, the covered person complies with this paragraph by stating this fact.

(e) Optional disclosures. In addition to the information required to be disclosed under paragraph (d) of this section, a covered person may, at its option, provide any other information regarding the transaction.

107.     No notice purporting to comply with 15 U.S.C. §1641(g) or 12 C.F.R. § 1026.39 was furnished to plaintiff in connection with the alleged assignment of the Valles Obligation to HERITAGE.

108.     On information and belief, based on the contents of **_Exhibit A_**, Defendants regularly fail to provide any such notice. The omission of the notice is therefore part of a pattern and practice of such omissions.

109.     Defendants violated TILA, 15 U.S.C. § 1641(g), by failing to give notice of a new creditor.

110.     As required by 15 U.S.C. § 1692g, Plaintiff timely disputed -- in writing -- the alleged Valles Obligation and HERITAGE's right to collect it. In her written dispute, which Defendants received, Plaintiff further demanded that HERITAGE send her: (a) proof that HERITAGE is the current owner of the Note; (b) a copy of the Promissory Note; verification of the disputed debt; (c) the name of the original creditor; and (d) the address of the original creditor.

111.     To date, HERITAGE has failed and refused to respond in any manner to Plaintiff's written dispute or otherwise provide the verification or other information Plaintiff requested in her dispute. Notwithstanding this, Defendants have continued unabated their efforts to collect the alleged Valles Obligation from Plaintiff.

112.     Tex. Fin. Code § 392.101 mandates that third-party debt collectors who are located in the State of Texas, such as the Defendants, may not engage in debt collection unless the third-party debt collector has obtained a $10,000.00 surety bond issued by a surety company authorized to do business in the State of Texas.

113.    For part of the class period defined herein, Defendants have failed to obtain a surety bond issued by a surety company authorized to do business in the State of Texas.

## V.  POLICIES AND PRACTICES COMPLAINED OF

114.    It is Defendants' policy and practice to send written collection communications, in the form attached as ***Exhibit A***, in connection with the collection of alleged consumer debts, which make false, deceptive, and misleading representations that any person is an attorney or that any communication is from an attorney.

115.    Such policies and practices are in violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692g(a)(2), 1692g(b), Tex. Fin. Code §§ 392.101, 392.301(a)(3), 392.301(a)(7), 392.301(a)(8), 392.304(a)(1)(A), 392.304(a)(8), and 15 U.S.C. § 1641(g).

116.    Defendants have admitted in discovery that there are at least 262 persons in the United States of America who received a written communication in the form attached as ***Exhibit A***, as alleged in this complaint under the Facts Concerning Plaintiff.

## VI.  CLASS ALLEGATIONS

117.    This action is brought as a class action. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

118.    With respect to the Plaintiff Class, this claim is brought on behalf of a class of (a) all persons in the United States of America (b) to whom Defendants sent a written communication materially similar to the form attached as ***Exhibit A***; (c) in an attempt to collect a defaulted residential mortgage purportedly acquired by HERITAGE; (d) which was not returned as undelivered by the United States Postal Service; (e) during the period beginning December 28, 2011, and ending January 18, 2013.

119.    The identities of all class members are readily ascertainable from the records of Defendants and those companies and entities on whose behalf it attempt to collects and/or purchases debts.

120.    Excluded from the Plaintiff Class are the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

121.    There are questions of law and fact common to the Plaintiff Class, which common issues predominate over any issues involving only individual class members. The principal issue is whether the Defendants' written communications to consumers, in the form attached as **_Exhibit A_**, violates 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692g(a)(2), 1692g(b), Tex. Fin. Code §§ 392.101, 392.301(a)(3), 392.301(a)(7), 392.301(a)(8), 392.304(a)(1)(A), 392.304(a)(8), and 15 U.S.C. § 1641(g).

122.    The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

123.    The Plaintiff will fairly and adequately protect the interests of the Plaintiff Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

124.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a)    **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that

the Plaintiff Class defined above is so numerous that joinder of all members would be impractical.

(b) **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff Class and those questions predominate over any questions or issues involving only individual class members. The principal issue is whether the Defendants' written communications to consumers, in the form attached as *Exhibit A*, violates 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692g(a)(2), 1692g(b), Tex. Fin. Code §§ 392.101, 392.301(a)(3), 392.301(a)(7), 392.301(a)(8), 392.304(a)(1)(A), 392.304(a)(8), and 15 U.S.C. § 1641(g).

(c) **Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff Class have claims arising out of the Defendants' common uniform course of conduct complained of herein.

(d) **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

(e) **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single

forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

125.   Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that Defendants' written communications to consumers, in the form attached as ***Exhibit A***, violates 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), or 1692g(a)(2) is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

126.   Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that Defendants' written communications to consumers, in the form attached as ***Exhibit A***, violates Tex. Fin. Code §§ 392.101, 392.301(a)(3), 392.301(a)(7), 392.301(a)(8), 392.304(a)(1)(A), or 392.304(a)(8) would permit Plaintiff and the Plaintiff Class to obtain injunctive relief pursuant to Tex Fin. Code § 392.403(a)(1)

127.   Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

128.   Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify a class only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## VII.  FIRST CAUSE OF ACTION
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(AGAINST ALL DEFENDANTS)**

129.    Plaintiff realleges and incorporate by reference the allegations in the preceding paragraphs of this Complaint.

130.    The Defendants' written communications in the form attached as ***Exhibit A*** are false, deceptive, and misleading in violation of 15 U.S.C. §§1692e, 1692e(5), and 1692e(10).

131.    The Defendants violated 15 U.S.C. §1692g(a)(2) by failing to identify the creditor to whom the alleged debt is owed.

132.    The Defendants further violated 15 U.S.C. §1692g(b) by continuing to collect the Valles Obligation from Plaintiff without first responding to Plaintiff's written dispute and providing the required verification.

## VIII.  SECOND CAUSE OF ACTION
**VIOLATIONS OF THE TEXAS DEBT COLLECTION PRACTICES ACT
(AGAINST ALL DEFENDANTS)**

133.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

134.    Defendants violated the TDCPA. Defendants' violations with respect to the written communications in the form attached as ***Exhibit A*** include, but are not limited to, the following: 392.301(a)(3), 392.301(a)(7), 392.301(a)(8), 392.304(a)(1)(A), and 392.304(a)(8).

## IX.  THIRD CAUSE OF ACTION
**VIOLATIONS OF THE TRUTH IN LENDING ACT
(AGAINST ALL DEFENDANTS)**

135.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

136.    Defendants violated the TILA, 15 U.S.C. § 1641(g), by failing to give proper

notice of a new creditor.

## X.  PRAYER FOR RELIEF

137.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and in favor of the Plaintiff Class as follows:

A.    **For the FIRST CAUSE OF ACTION**:

(i)    An order certifying that the First Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the Plaintiff Class as previously set forth and defined above;

(ii)    An award of the maximum statutory damages for Plaintiff and the Plaintiff Class pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(iii)    For declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 adjudging Defendants' collection conduct complained of herein violates the FDCPA;

(iv)    Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(v)    For such other and further relief as may be just and proper.

B.    **For the SECOND CAUSE OF ACTION**:

(i)    An order certifying that the Second Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and Tex Fin. Code § 392.403(a), and appointing Plaintiff and the undersigned counsel to represent the Plaintiff Class as previously set forth and defined above.

(ii)    An award of the maximum statutory damages for Plaintiff and the Plaintiff Class pursuant to Tex Fin. Code § 392.403(e);

(iii)   For injunctive relief for Plaintiff and the Plaintiff Class pursuant to Tex Fin. Code § 392.403(a)(1), including enjoining the Defendants from engaging in further violations of Chapter 392 of the Texas Finance Code as complained of herein;

(iv)   For declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 adjudicating that Defendants' collection conduct complained of herein violates the violates the TDCPA;

(v)   Attorney's fees, litigation expenses, and costs pursuant to Tex. Fin. Code § 392.403(b); and

(vi)   For such other and further relief as may be just and proper.

C.   **For the THIRD CAUSE OF ACTION**:

(i)   An order certifying that the Third Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the Plaintiff Class as previously set forth and defined above;

(ii)   An award of the maximum statutory damages for Plaintiff and the Plaintiff Class pursuant to 15 U.S.C. § 1640(a);

(iii)   For declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 adjudging Defendants' collection conduct complained of herein violates the TILA;

(iv)   Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1640(a)(3); and

(v)   For such other and further relief as may be just and proper.

## XI. JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

DATED:          Uniondale, New York
                December 10, 2013

Abraham Kleinman, Esq. (AK-6300)
KLEINMAN LLC
626 RXR Plaza
Uniondale, NY  11556
Telephone: (516) 522-2621
Facsimile:  (888) 522-1692
E-Mail:  akleinman@kleinmanllc.com

William F. Horn, Esq. (WH-1070)
LAW OFFICE OF WILLIAM F. HORN
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone: (718) 785-0543
Facsimile:  (866) 596-9003
Email: bill@wfhlegal.com

*Attorneys for Plaintiff, Stephanie Valles, and all others similarly situated*

# EXHIBIT "B"

# LAW OFFICES OF STEVEN COHEN LLC

4197 THIRD AVENUE
BRONX, NEW YORK 10457
TEL: (212) 564-1900
FAX: (212) 954-5566

STEVEN COHEN
MELBA FELIBERTY*
BRUCE E. RACHMIL

———————

*Member NY & NJ Bar

December 16, 2013

**VIA FACSIMILE AND U.S. MAIL**
Abraham Kleinman, Esq.
Kleinman LLC
626 RXR Plaza
Uniondale, New York 11556

William F. Horn, Esq.
Law Office of William F. Horn
188-01 71st Crescent
Fresh Meadows, New York 11365

Re: Valles v. Heritage Pacific Financial, et al.
Case No. 12 CV 9452

Dear Sirs:

This office represents Defendants Heritage Pacific Financial, Christopher Ganter, Benjamin Ganter, Kenneth Knox and John Monteiro. Please take notice that we do not consent to the filing of the proposed First Amended Complaint.

Very truly yours,

Melba Feliberty

MF:mf